UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>PAUL D. STICKLER<br>SSN:XXX-XX-0707<br><br>    Debtor.<br><br>SWIFT FINANCIAL CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>PAUL D. STICKLER,<br><br>    Defendant. | )<br>) Bankruptcy No. 15-12508-SBB<br>)<br>)<br>) Chapter 7<br>)<br>)<br>)<br>)<br>)<br>) Adv. Proc. No. 15-<br>)<br>)<br>)<br>) |

## COMPLAINT OBJECTING TO DISCHARGEABILITY
## OF DEBT PURSUANT TO 11 U.S.C §§ 523(a)(2), (4) AND (6)

Swift Financial Corporation ("Swift"), by and through its undersigned counsel, for its Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2), (4) and (6) states:

### PARTIES, VENUE AND JURISDICTION

1. As set forth on the Voluntary Petition filed the captioned bankruptcy case (the "Bankruptcy Case"), Defendant, Paul D. Stickler ("Defendant" or "Debtor"), is the Debtor in the Bankruptcy Case who resides at 10219 Sagecrest Street, Highlands Ranch, Colorado 80126.

2. Swift is a merchant cash advance company which purchases the future receivables of businesses at a discount in exchange for contractual repayment.

3. This adversary proceeding is commenced pursuant to Rule 7001, et seq. of the Federal Rules of Bankruptcy Procedure.

4. This Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1331 and 1334(b) because this proceeding arises under the Bankruptcy Code and arises in and is related to the Chapter 7 case filed by the Defendant.

5. This a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(I) and (J).

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this Adversary Proceeding arises under and in connection with a case under Title 11 which is pending in this District.

## GENERAL ALLEGATIONS

7. As set forth in the Debtor's Statement of Financial Affairs (the "SOFA") filed in the Bankruptcy Case, since 2010 the Debtor has owned and operated a business known as Fern Creek Five, LLC ("FCF") d/b/a Creek Seafood Grill. The Debtor has failed to disclose in the SOFA the date FCF ceased operation. Upon information and belief, FCF was dissolved on or around November 21, 2014.

8. FCF was a seafood restaurant.

9. The Debtor is the owner and managed the day to day operations of FCF.

10. The SOFA discloses that in October of 2014 the Debtor began operating a steak restaurant under the entity name Jordan Creek, Inc. ("JCI") d/b/a Copper Creek Chophouse.

11. The Debtor owns and manages the day to day operations of JCI.

12. On or around September 3, 2014, Swift entered into a Future Receivables Sale Agreement with FCF (the "Sale Agreement"), with the Debtor as guarantor, whereby FCF sold to Swift $69,950 in future receivables ("Future Receivables") for $50,000 (the "Purchase Price").[1] FCF is obligated under the Sale Agreement to pay 10% of its Future Receivables each day to Swift (the "Daily Payment").

13. The $50,000 Purchase Price was paid by Swift to or for the benefit of FCF on September 4, 2014, after the execution of the Sale Agreement.

14. To induce Swift to enter into the Sale Agreement and pay the Purchase Price, FCF is obligated under the Sale Agreement to provide an irrevocable electronic transfer from its bank account to Swift (the "ACH") for the Daily Payment.

15. To induce Swift to enter into the Sale Agreement and pay the Purchase Price, FCF, through the Debtor, provided a general financial disclosure statement dated August

---

[1] Future Receivables is defined in the Sale Agreement to mean "Any and all funds that Business receives from the use by Business's customers of cash, checks, money orders, electronic transfers, cards (including, without limitation, credit cards, charge cards, debit cards, prepaid cards, benefit cards, or similar cards) or other forms of payment to purchase Business's products and/or services (including, without limitation, any such funds that are processed by Business's card processor(s))..

20, 2014 (the "Disclosure") to Swift, disclosing, among other information, the income of FCF.

16. Approximately one month after the payment of the Purchase Price, the Debtor opened JCI. Approximately 80 days after the payment of the Purchase Price, FCF was dissolved. The Debtor never disclosed to Swift his intention to close the FCF seafood restaurant and dissolve the company. The Debtor never disclosed to Swift his intention to open JCI.

17. At the time of the execution of the Sale Agreement, the Debtor knew that he was closing the FCF restaurant and opening the JCI restaurant.

18. At the time of the execution of the Sale Agreement, the Debtor knew he, either personally or through FCF, had no intention of honoring the obligations under the Sale Agreement.

19. At the time of the execution of the Sale Agreement, the Debtor knew he had sold to Swift FCF's Future Receivables. He further knew that soon after entering into the Sale Agreement that FCF would no longer be generating Future Receivables.

20. At the time of the execution of the Sale Agreement, the Debtor knew FCF had the Daily Payment and ACH obligations under the Sale Agreement. He further knew that soon after entering into the Sale Agreement that FCF would not be honoring the Daily Payment and ACH obligations.

21. At the time of the execution of the Sale Agreement, the Debtor knew that Swift was relying upon the Disclosure in determining whether or not to enter into the Sale Agreement. At the time of the execution of the Sale Agreement, the Debtor knew that the Disclosure was used by Swift to determine the revenues of FCF and whether and to what extent Swift would pay for FCF's Future Receivables under the Sale Agreement. At the time of the execution of the Sale Agreement, the Debtor knew that the Disclosure did not reflect the future earnings of FCF and therefore was false and misleading.

22. Upon information and belief, the Debtor utilized all or a portion of the Sale Proceeds to fund the operations of the JCI restaurant.

23. Swift is listed on the Debtor's Schedule F as filed in the Bankruptcy Case with a claim amount of $57,634 (the "Nondischarge Claim").

**COUNT I**

## NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)

24. Swift realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

25. The Debtor is obligated to Swift for money provided under the Sale Agreement.

26. FCF is an insider of the Debtor as the term is defined in the Bankruptcy Code.

27. The Debtor, through FCF, to induce Swift to give to FCF the Purchase Price made false pretenses, false representations or committed actual fraud, other than a statement respecting the Debtor's or an insider's financial condition.

28. Such false pretenses, false representations or actual fraud include but are not limited to the statement that FCF: (a) had and would have ongoing business operations; (b) had the ability to and would make the Daily Payment; (c) would not revoke the ACH; and (d) the Purchase Price would be used by and for the benefit of FCF.

29. The Debtor, through FCF, used a statement in writing, including, without limitation, the Disclosure and the representations, warranties and covenants in the Sale Agreement, which were materially false with respect to FCF's financial condition, and upon which Swift relied upon in providing the Purchase Price, which written statements were issued with the intent to deceive Swift.

30. Such false statements in the Disclosure And Sale Agreement include, without limitation, (a) the revenue stream of FCF, (b) that there are no claim against the sold receivables, and (c) the business will continue operations.

31. As a direct and proximate result of Defendant's conduct, Swift has been damaged.

WHEREFORE Swift respectfully requests that the Court enter judgment in its favor and against Defendant in the amount of the Nondischarge Claim and deny a discharge of the Nondischarge Claim, or such other amounts as determined at trial, plus attorney's fees and costs, pursuant to 11 U.S.C. § 523(a)(2).

## COUNT II

## NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(4)

32. Swift realleges and incorporates by reference each and every allegation set

forth in the foregoing paragraphs as if fully set forth herein.

33. The Defendant, either personally or through entities under his ownership and/or control, including FCF, received and maintained the Daily Payment, which proceeds were property of Swift.

34. The Defendant, either personally or through entities under his ownership and/or control, including FCF, has failed to turnover the Daily Proceeds.

35. The Defendant, either personally or through entities under his ownership and/or control, including FCF, retained the Daily Proceeds for Defendant's personal gain.

36. As a direct and proximate result of Defendant's conduct, Swift has been damaged.

37. The conduct of Defendant constitutes embezzlement or larceny.

WHEREFORE Swift respectfully requests that the Court enter judgment in its favor and against Defendant in the amount of the Nondischarge Claim and deny a discharge of the Nondischarge Claim, or such other amounts as determined at trial, plus attorney's fees and costs, pursuant to 11 U.S.C. § 523(a)(4).

## COUNT III
## NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)

38. Swift realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

39. The Defendant, either personally or through entities under his ownership and/or control, including FCF, with willful and malicious intent, failed and refused to pay and intentionally diverted from Swift the Daily Payment.

40. The Defendant, either personally or through entities under his ownership and/or control, including FCF, with willful and malicious intent, induced Swift to advance the Purchase Price knowing it had no intention of satisfying the obligations under the Sale Agreement.

41. The Defendant, either personally or through entities under his ownership and/or control, including FCF, with willful and malicious intent, violated the terms, conditions and obligations under the Sale Agreement.

42. The Defendant, either personally or through entities under his ownership and/or control, including FCF, with willful and malicious intent, induced Swift to

advance the Purchase Price knowing FCF would be closing, that it would not have in the future any Future Receivables, that it would not be making the Daily Payment, that it would not be satisfying the ACH obligation, that the Disclosure was false and misleading, and that the representations, warranties and covenants in the Sale Agreement were false and misleading.

43. The Defendant's conduct was willful and malicious causing injury to Swift.

WHEREFORE Swift respectfully requests that the Court enter judgment in its favor and against Defendant in the amount of the Nondischarge Claim and deny a discharge of the Nondischarge Claim, or such other amount as determined at trial, plus attorney's fees and costs, pursuant to 11 U.S.C. § 523(a)(6).

Dated: May 18, 2015

Respectfully submitted,

By: _____
Aaron A. Garber #36099
KUTNER BRINEN GARBER, P.C.
1660 Lincoln St. Suite 1850
Denver, CO 80624
Telephone: (303) 832-2400
Facsimile: (303) 832-1510
E-mail: aag@kutnerlaw.com